IN THE  UNITED STATES DISTRICT COURT OF SOUTH CAROLINA
BEAUFORT COUNTY DIVISION

| | |
|---|---|
| JACQUELINE PIDANICK,<br>      Plaintiff,<br><br>vs.<br><br>CHRISTOPHER MADDALONI<br>      Defendant,<br>MARSHALL HORTON,<br>      Defendant,<br>HORTON AND GOODMAN, LLC,<br>      a South Carolina Limited Liability<br>      Corporation<br>PAUL C. LAROSA III,<br>      individually and in his official<br>      capacity, and<br>CHRIS SANKOWSKI,<br>      individually and in his official<br>      capacity. | Case No. 9-17-cv-00281-DCN-MGB<br><br><br>JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF
42 USC SEC. 1983, FIRST AMENDMENT RETALIATION,
ABUSE OF PROCESS AND INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS**

NOW  comes your plaintiff, Ms. Jacqueline Pidanick ("Mother Jakkie"), pro se
and files herewith her complaint for damages and an injunction against attorney
Marshall Horton and his Law firm "Horton and Goodman, LLC", and his client
Christopher Maddaloni ("Father Maddaloni") for an injunction and damages for Abuse of
Process, Civil Conspiracy and Intentional Infliction of Emotional Distress to deprive
Plaintiff Jakkie of her First Amendment and Civil Rights.  Plaintiff Mother Jakkie further
files her Complaint against Defendants Officers LaRose and Slakowsky for 42 USC sec.
1983, US First Amendment Retaliation; South Carolina Free Speech Retaliation, Civil
Conspiracy and Intentional Infliction of Emotional Distress.

### A. The Parties:

1.      Jacqueline Pidanick is a mother to Olivia, a minor child, and she resides in Beaufort County, South Carolina at 4924 Bluffton Parkway, South Carolina 29910.

2.      Christopher Maddaloni is the father to Olivia, a minor child and he resides and does business in Beaufort County, South Carolina and his residence is at 26 Victory Point Drive. (It is believed the Mr. Maddaloni has moved but has not given a forwarding street address which is a violation of the Final Order, April 1st 2015 Beaufort family court)

3.      Marshall Horton is a South Carolina licensed attorney, and upon information and belief he resides in Beaufort County South Carolina and the acts complained of against him occurred in Beaufort County, South Carolina.

4.      The firm Horton and Goodman, LLC, is a licensed professional LLC doing business as a law firm in  Beaufort County South Carolina, and it does business within Beaufort County, South Carolina and Marshall Horton is one of its partners and agent.

5.      Defendant Paul C. La Rosa III is a SLED ("South Carolina Law Enforcement Division") Behavioral Science Unit Criminal Profiler whose place of business is 4400 Broad River Rd, Columbia, SC 29210.  His badge number is 718.  All of the acts complained of against him occurred within Beaufort County, South Carolina.

6.      Defendant Chris Sankowski is a Beaufort County Sheriff's Officer whose place of business is 2001 Duke St, PO Box 1758, Beaufort, SC 29901.  His

badge number is S7084.  All of the acts complained of against him occurred within Beaufort County, South Carolina.

**A.**      **Jurisdiction and Venue**

1.      This Court has jurisdiction pursuant to 28 U.S.C 1331, 1367. Venue is proper under 28 U.S.C.  1391(b). The parties reside in this judicial district, or do business within this jurisdiction district, and the events giving rise to the claims asserted herein occurred herein as well.

**B.   Statement of facts--Horton Cease and Desist Demands**:

2.    On March 30th 2016, Defendant Attorney Horton was reprimanded by Judge Peter L. Fuge for bringing a motion for clarification regarding the parties' Visitation Order and Judge Fuge struck it down stating the final order regarding Visitation with the Father was clear to Attorney Horton (Exhibit A,hereto) and Attorney Horton had no grounds to demand that Mother Jakkie turn over Child Olivia to the Father for a 2 week period during "Christmas Break" because the child is still a toddler, is only in preschool and preschool has no 2 week Christmas break.

3.   A dispute arose between the parties over days of visitation by Defendant Father Maddaloni in November 2016. On November 21st and December 9th 2016, Defendant Horton, as the agent and attorney for Defendant Father, sent Mother Jakkie a letter demanding that she turn over child Olivia for a number of days coinciding with the Beaufort County School Calendar. However, child Olivia does not attend any Beaufort County School. She attends a Private daycare. Olivia is 3 years old. Regardless, the days of

visitation are not in dispute for purposes of this cause of action. The only issue in dispute is whether Attorney Horton can demand Mother Jakkie must remove content from her Facebook and other social media pages when said Content ("Subject Content") is not defamatory in any sense of the word, and represents only pleadings previously filed in state court and these postings state facts and the truth only.

4.      On November 21st 2016 and December 9h 2016, Attorney Horton sent a false and wrongful demand letter to Mother Jakkie DEMANDING that she remove Content on her Facebook account and on other websites, as he asserted that it was defamatory in nature, when in fact the Subject Content was Truthful and protected by the Litigation and other privileges under the First Amendment to the US Constitution (Exhibit B hereto).[1]

5.      On December 8th 2016, Mother Jakkie sent Attorney Horton a communication stating that the content was factual in nature, had been filed with the Beaufort County Family Court, and that she was asserting a litigation privilege and truth as a defense claim.

6.      On November 16th 2016, Attorney Horton filed a motion with the Beaufort county court advising them the Facebook post was defamatory and motioned the court to remove it.

7.      On January 17th 2017, the court entered a Summary Order stating 20 days in jail for Mother Jakkie with $4,192.00 to be paid to Attorney Horton for Mr.

---

[1] First Amendment exceptions include, but are not limited to:  Opinion, Hyperbole, Litigation Privilege, Fair Report or Commentary, Wire Service Exception, Libel Proof Plaintiff, etc.

Maddaloni's lawyer fees and $500.00 to be paid to the court as a fine. The family law court stated that "Ms. Pidanick was hiding behind her 1st amendment rights" and convicted her of "hiding behind 1st amendment rights and lawyers and judges", stated Judge Guyton. (Exhibit C rough draft written by Marshall Horton).

8.  Mother Jakkie was denied time to find a lawyer by the Honorable state court .

9.  Mother Jakkie was told by Judge Guyton during the trial, "I (Judge Guyton) will NOT appoint you an Attorney".

10. Mother Jakkie was told by the Honorable court that she could not use Press Privilege as a defense to her postings by the Honorable Judge Guyton to tell her own story in her own words and phrases.


### C.  Plaintiff Jakkie has effectively Exhausted all her State Court Remedies granting her Protection and Relief—the State Court has Consistently Blocked Transcripts, Court Order Copies, Transcripts have been Altered, etc.

11. The Clerk of Courts at Beaufort County has,  for 5 months, continuously and repeatedly denied Plaintiff Jakkie meaningful access to the records and files needed to correctly file her appeals of several Trial Court Orders (Exhibit D). Whenever Plaintiff Jakkie has called the Clerk of Court for when her Record on Appeal would be ready for pickup, the Clerk either pretends she does not know what Jakkie is speaking of, or claims it is not ready, although it has been months since Plaintiff Jakkie first filed her request to prepare the record and designated appropriate record portions for the Clerk of Court to copy, page number and Certify for the Court of Appeals.  (See links to phone

conversations at

http://drive.google.com/open?id=0B0moGz43UwcjVzNvSEZEMDNtWms.

12.        In addition, numerous transcripts have been changed or altered from the true statements made in court. (Exhibit E, hereto).  This occurred on at least the following dates: (March 30th 2016 and July 25/28th 2016 and Jan. 17th 2017).

13.        Finally, Plaintiff Jakkie was not promptly provided with a copy of the Court Order for her Contempt Hearing which occurred on Jan. 17, 2017.  The Rules of Court for filing an Amended Notice of Appeal require attaching a copy of the Court Order to the Notice of Appeal, Rule 203 (B) (ii).

14.        During this 1/17/17 hearing for indirect civil contempt, Mother Jakkie was entitled to 1) an arraignment; 2) notice of the charges brought against her; 3) appointment of an attorney if she could not afford one; 4) discovery; and 5) a jury trial.  Mother Jakkie was informed by the trial court judge that she would not receive any of these Constitutional protections.  Thus, the 1/17/17 hearing was unconstitutional and void *ab initio* and all orders emanating from this Summary Proceeding must be stricken, including the $5,000 sanctions award and possible jail time. ( Ms. Pidanick has paid $1500 to Mr. Horton of the $4192.00 and $500 to Beaufort county court already )

**D.  42 USC 1983 violations by SLED Officers LaRosa and Sankowski**

15.    On April 20, 2014, Plaintiff Jakkie was visited by two South Carolina Law Enforcement Division ("SLED") who informed her she was under investigation for the crime of "Intimidation of a Judicial Official" for her Facebook posts wherein she stated that scores of parent litigants had unjustly lost all visitation or contact

with their children which appeared to be based more on cronyism and ex parte deals made in the courtroom rather than the facts presented to the court in the courtroom.  As a result of the dissent by these aggrieved parents, and due to the corruption in the courts, she posted that the situation is becoming serious because judges were getting killed.[2]  At no point in her post did she ever say that she would ever harm or threaten to harm a judge. At no point in her post did she ever say that any aggrieved litigant she knew would ever threaten to harm a judge.  While Mother Jakkie is an activist, she is also a pacifist and does not believe that violence is an appropriate response to any adverse situation.

16.     She instructed the officers--Defendants LaRosa and Sankowski that she was very upset that children were being abused and the South Carolina family courts were doing nothing about it and/or were awarding full custody to an abusive parent and denying Protective Parents all contact with their children.  In doing so, this has perpetuated a system where the Protective Parent would have to spend tens of thousands of dollars in legal fees to fight to see their own children.

17.     Worse yet, she had become aware of scores of perfectly valid grievances filed with the authorities by Protective Parents who were denied contact with their children because the ex partner/spouse hired a clouted, wealthy and/or connected law firm, or the abusive parent had hired an expensive clouted wired

---

[2] When corrupt judges are murdered, it is not an aggrieved litigant that is the cause of the murder.  Generally, corrupt judges it turns out are taking money from the mob and it is actually the mob that carries out a professional style murder when the judge reneges on any of his duties or promises to the mob.  Sometimes the crime will be made to look like it is the result of a crazed, aggrieved litigant, but murders of corrupt judges for the most part can be linked to some mob duty which was not performed and it generally involves money.

Page 6 of 26 - First Amended Complaint for 42 USC sec. 1983

"consultant" such as a psychiatrist or psychologist or evaluator who always drafted reports in favor of the wealthier parent and trashed any parent who could not pay their inflated bills.

18. The grievances of these Protective Parents were generally dismissed by the authorities[3] with a form letter, or they were "lost" multiple times and rarely, if ever, did any honest, valid and thorough investigation result of the licensed professional involved, which could be any of the following; a judge, an attorney or attorneys in court, M.D.'s, psychiatrists, psychologists, child evaluators, licensed social workers, case managers, etc.

19. However, the officers violated Plaintiff Mother Jakkie's Free Speech rights under the US Constitution and under the South Carolina Constitution when they informed Plaintiff Jakkie that she had to avoid using certain words and terms; that while they personally could not arrest her, their reports could be used by other law enforcement staff to arrest her for intimidation of a judge if she used certain language and phrases, even if those words and phrases showed no indication of an attempt to harm a judge's person or property.  Strangely enough, Deft. Officer LaRosa even admitted to Plaintiff Jakkie that he himself had committed a crime--42 USC 242 or denial of rights under color of authority when he arrested and had assisted in the prosecution of some poor innocent citizen for sending a judge a letter strongly and obnoxiously criticizing the judge, not because the citizen threatened the judge with harm to person or property, but only because

---

[3] The Judicial Disciplinary Board, the Attorney Disciplinary Board, the Department of Professional Regulation for licensed Doctors, Psychologists, Social Workers, Therapists, etc.

the judge "felt threatened" which is not the legal standard for arresting a citizen for criminal speech.[4]  The speech itself is subject to "strict scrutiny" standard and further it must threaten to harm a person or his property--at a minimum.

20.    The telling of such a horror story wherein the police profess no real standards for charging and prosecuting an ordinary citizen for "Intimidation of a Judicial Official" was meant only to intimidate, harass, and chill the speech of Mother Jakkie and suppress her First Amendment rights under the US Constitution and Free Speech rights under the SC constitution.

21.    Further, when Mother Jakkie insisted that the Officers transmit to her the actual statutes they were alleging she might have violated, she was shocked to learn that the threat had to be direct and not indirect, and accordingly a Facebook post would never qualify for prosecution under the statute referred to by the officers.

22.    Accordingly, Plaintiff Mother Jakkie has spent many sleepless nights and has suffered panic attacks and numerous adverse emotional and physical reactions to the "investigation" which was in reality nothing but pure harassment, intimidation and a false threat to her Free Speech rights under the US and South Carolina Constitutions.

---

[4] See, U.S. v. Alvarez wherein Mr. Alvarez told a number of people that he had a Medal of Honor awarded him by the US Congress and had served as a war hero, when this was only in his imagination.  The US Supreme Court struck down the Stolen Valor Act as being unconstitutional under the First Amendment and held that Mr. Alvarez had a right to lie to third parties all he wanted about his imaginary Medal of Honor and it was not a crime.  U.S. v. Alvarez, 567 US _ (2012), https://www.supremecourt.gov/opinions/11pdf/11-210d4e9.pdf

Page 8 of 26 - First Amended Complaint for 42 USC sec. 1983

## COUNT 1
## ABUSE OF PROCESS

23.    Plaintiff Mother Jakkie herewith alleges each of the following foregoing paragraphs in this Complaint as if fully set forth herein.

24.    This count is against Defendants Horton and Maddaloni.

25.    That on November 21st and December 9th 2016, Defts. Horton Horton sent cease and desist letters to Plaintiff Jackie which clearly violated the First amendment of the United States Constitution and threatened to use the South Carolina court system to wrongfully harass, intimidate and chill her speech by claiming she could not post certain political statements on Facebook and other social media.  In particular, they claimed that a post to remove Judge Fuge in fact defamed Deft. Father Maddaloni, when in fact, this was Mother Jakkie's First Amendment right to post social commentary and grievances..

26.    Mother Jakkie claimed Truth as a dense to the statements made on her Facebook post, as well as Reporter's Privilege, Fair Commentary, Opinion, etc.,  and verifies that each of the statements made were true and accurate at the time they were made, and where based upon information and belief, were believed to be true at the time the statements were made.

27.    That she further claimed Litigation, Opinion and Fair Report or

Commentary privileges in that each of the Affidavits posted were also filed with the Beaufort County Court system.

28.    That Defendant Horton had no basis in law or fact to send his demand letters dated November 21st and December 6th 2016 (Exhibit B, hereto) instructing her to remove Facebook posts and Petition to Remove Judge Fuge or they would seek a Rule to Show Cause. The actions wrongfully violated her First Amendment rights under the US Constitution.

29.    That the court had no basis in law or fact to issue the order for January 17th 2017 insisting that Mother Jakkie remove any contents on her Facebook pages and other Social Media and that the order was wrongful and violated the United States Constitution, First Amendment.

30.    Defendants Horton and Maddaloni instigated and fully participated in court proceedings designed to harass and chill the speech of Mother Jakkie. Deft. Horton in particular, as an officer of the court, knew that Mother Jakkie, being brought into the court on charges of indirect civil contempt, and accordingly knew that Mother Jakkie was entitled to adequate notice of a hearing, an arraignment, discovery, time to obtain counsel and a jury trial. The actions of the Defendants Horton and Maddaloni were wilful, without due regard to Plaintiff Jakkie's Free Speech rights and were outrageous.

31.    That Plaintiff Mother Jakkie is entitled to an injunction against Attorney Horton, his client Defendant Maddaloni, and their assigns and those in privity with them from issuing any demand letter regarding Mother Jakkie's

Facebook posts, or her online Petitions regarding State Court Judges, or any social media protest posts.

32.    That Plaintiff Mother Jakkie is entitled to her Attorney's fees and damages for the wrongful Demand letter that violate her First Amendment Rights and Due Process rights under the United States Constitution.   She is further entitled to punitive damages in that the actions of defendants were wilful, malicious, intentional and/or reckless and without due regard to her First Amendment and Due Process Rights.


## COUNT II

## VIOLATIONS OF 18 USC Sec. 1030 FOR COMPUTER FRAUD ACTIVITIES

33.    Plaintiff Jakkie herewith alleges each of the foregoing paragraphs as if fully set forth herein.

34.    This count is against Defendants Horton and Maddaloni.

35.    On November 21, 2016 and December 9, 2016, Defendants Horton, on behalf of their client, Deft. Maddaloni, sent Plaintiff Jakkie Cease and Desist letters demanding that she remove content from her social media pages and posts, including a Petition on Change.org calling for the removal of Judge Fuge, all of which was well within her well established Constitutional Rights.

36. Subsequently, a kangaroo hearing occurred on a charge of indirect civil contempt was undertaken before of Judge Guyton, during which 1)  Plaintiff Jakkie was given insufficient time to prepare for the hearing; 2) Plaintiff Jakkie received no arraignment; 3) she was not provided with any time to find an

attorney; 4) she was not provided with time for discovery and 5) she was not permitted a Jury Trial. Defts. Horton and Maddaloni directly or indirectly participated in the proceeding, and at no time asserted that Mother Jakkie was entitled to her Constitutional Rights. Deft. Horton, in fact, was and still is a licensed Officer of the Court.

37. As a result of the hearing, Mother Jakkie was wrongfully found in Contempt of Court and fined $4,192.00 or 20 days in jail. She has since appealed that Order, and the Order has been stayed pending appeal on the merits.

38. That the cease and Desist letters of Nov 21 and Dec. 9, 2016 were sent by both first class mail, USPS, and also by email.

39. That the letters were wrongful and fraudulent in nature and violated Plaintiff Jakkie's First Amendment rights and led directly to the false and wrongful conviction in a summary proceeding of Indirect Civil Contempt without Due Process protections for Plaintiff Jakkie.

40. That Deft. Marshall Horton works for Deft. law firm Horton and Goodman, LLC and as such, as a licensed attorney, he has no actual authority to send out cease and desist letters which impinge upon and interfere with any third party's First Amendment rights under the US Constitution.

41. That upon information and belief, the computer(s) used to send the wrongful emails were a computer that Defts. Horton uses for his work as a lawyer, and this computer is regularly used for his work communications as a lawyer, which computer therefore regularly affects interstate commerce.

42. Upon information and belief, Deft Horton had no right or authorization as a

South Carolina licensed attorney to access his work computer and send out illegal and wrongful Cease and Desist Letters or use this work computer to send out pleadings which violated the Constitutional Free Speech Rights, civil and due process rights of Plaintiff Jakkie.

43.   That 18 USC sec 1030 provides that a Plaintiff may commence a civil action if she has suffered more than $5,000 in damages as a result of said Computer Fraud Activities.

44.   That an Order issued against Mother Jakkie for some $4200.00 or 20 days in jail, Exhibit C, hereto.  That there was also a fine assessed of $500. In addition, Plaintiff Jakkie had to take time off from work the day before her summary hearing and on the day of the hearing,  and her lost wages are $975 amount.  She has also taken time from work and has suffered lost profits in her small business as a result of spending hours in legal research and drafting motions, briefs and complaints in court.

45.   Since Mother Jakkie has suffered more than $5,000 in damages as a result of the use of a computer to transmit wrongful Cease and Desist letters, she is entitled to file a civil action under 18 USC sec 1030.

46.   Wherefore, Mother Jakkie is requesting in excess of $5,000  in her actual damages for lost work profits before, during and after the wrongful court proceeding violating her rights, to recompense her for costs in attend court and hearings, file and prepare an Appellate Briefs, Motions and other Pleadings in order to answer the wrongful finding of Indirect Civil Contempt which was initiated by the Cease and Desist Letters sent to her wrongfully

demanding that she remove political speech from her Facebook and

Change.org Petitions created online.

## COUNT III
## VIOLATIONS OF 42 U.S.C SEC. 1983
## BY DEFTS. SANKOWSKI AND LAROSA

47.      Mother Jakkie herewith alleges each of the foregoing paragraphs in this

Complaint as if fully set forth herein.

48.      This count is against Defendants LaRosa and Sankowski.

49.      That on April 20 th 2017, Defendants Sankowski and LaRosa together came to

Plaintiff Jakkie's home ostensibly to investigate her for Violations of South Carolina's

law regarding "Intimidation of Judicial Officials",  South Carolina Stats. 16-3-1040 and

16-9-340.  During the conversation Defts. Sankowski and LaRosa stated to Plaintiff

Jakkie that this was a investigation and she was under investigation for "intimidation of a

South Carolina Judge" and that certain statements she made on the internet triggered

the investigation.

50.      In no manner can the posts of Plaintiff Jakkie be construed as a threat or use of

force to impede a judge.  It is utterly ludicrous for Defendants Sankowski and LaRosa to

even suggest or imply that Plaintiff Jakkie's posts were a use of a threat, or that she in

any manner used force to impede a judge in his duties.  The instruction to "avoid the

use of certain words and terms" in Plaintiff Jakkie's Facebook posts clearly violated

Plaintiff's Free Speech rights under the U.S. and South Carolina Constitutions.  The

entire interaction was extremely emotionally disturbing to Plaintiff Jakkie.

51.    That  the use of SLED officer LaRosa and Deputy Sankowski to enter Plaintiff's home on the ruse of an investigation for alleged violations of S.C. Stats. 16-3-1040 and 16-9-340 clearly exceeded their authorization and power and was a complete waste of taxpayer money used in an attempt to intimidate her, chill her speech and harass her, all of which actions are wrongful and comprise First Amendment Retaliation under the U.S. constitution and Free Speech Retaliation under the South Carolina constitution.

52.    During the "investigation", one of the officers told a story in which he asserted that a letter sent to a judge by a disgruntled litigant, was not really a threat to the judge, but because the judge just "felt threatened" and this officer believed it was perfectly acceptable to arrest this disgruntled litigant, book him, charge him and assist in the wrongful prosecution of an innocent defendant.  While it is interesting that a SLED officer would admit he committed a crime in doing so--18 USC sec. 242 for deprivation of civil rights under color of authority, the telling of the story was clearly meant to harass, intimidate,  disturb, and wrongfully and illegally chill the free speech rights of Plaintiff Jakkie, and it did in fact do so.

53.    That Plaintiff Mother Jakkie is entitled to an injunction against Officers Sankowski and LaRosa and their assigns and those in privity with them from demanding investigations of the Plaintiff and that she refrain from the use of Mother Jakkie using "certain words and phrases" in her Facebook posts regarding judges and court officials so that these officers "don't have to" further come out and "investigate her", and so that she is not intimidated into believing she may be falsely arrested.

Page 15 of 26 - First Amended Complaint for 42 USC sec. 1983

54.        That Plaintiff Mother Jakkie is entitled to her attorney's fees and damages for violations of 18 USC sec. 1983 and her Free Speech Rights.   Plaintiff Jakkie is further entitled to punitive damages in that the actions of defendants were malicious, intentional and/or reckless and without due regard to her First Amendment Rights.

## COUNT IV
## CIVIL CONSPIRACY TO DEPRIVE PLAINTIFF OF
## HER FIRST AMENDMENT AND CIVIL RIGHTS

55.    Plaintiff Jakkie herewith alleges each of the foregoing paragraphs as if fully set forth herein.

56.    This Cause of Action is against all Defendants.

57.    Defendants Horton and Maddaloni engaged in a civil conspiracy against Plaintiff Jakkie's First Amendment rights when they conspired together to made an unlawful plan to file a Motion in the Beaufort County court system asking the Trial Court to enter an Order to remove posts that Jakkie had made on Facebook and other Social Media that were Truthful, consisted of pleadings filed in the Trial Court, and which was Jakkie's speech which should have been protected under the US and South Carolina Constitution as Free Speech.

58.    Defts. Horton and Maddaloni either knew or should have known that the Courts have no right to regulate social media for statements made regarding court proceedings and grievances regarding court proceedings.

59.    The actions of all Defendants in filing a Motion intended to quash Plaintiff's

First Amendment rights and chill her speech was wilful, contemptuous and done with malicious intent. The plans made by the Defendants was intended to chill Plaintiff's First Amendment rights, and the Summary Issuance of an injunction for $5,000 in sanctions, together with a threat of jail time, was intended to cause great and intentional harm, and did in fact cause harm to Plaintiff Jakkie to quell or chill her rights to Free Speech.

60.  That all Defendants directly participated in a Motion and Hearing without notice to obtain a wrongful Court Order to remove Content from Plaintiff's Social Media websites, when in fact, all Defendants knew or should have known the hearing was wrongful as Plaintiff Jakkie was denied her First Amendment Rights and her right to Notice, Discovery, an Arraignment and a Jury Trial inasmuch as it was essentially a Hearing for Indirect Civil Contempt.

61.   In addition, the Defendants knew or should have known that Plaintiff Jakkie was entitled to an attorney present at any hearing for Indirect Civil Contempt and five business day notice was insufficient to make any valid findings for indirect Civil Contempt.  Rather, all the Defendants conspired together to make motions and argument to deny Plaintiff Jakkie an attorney. They further participated in a Summary Hearing when they knew or should have known that Plaintiff Jakkie was entitled to Notice, Discovery and a Jury Trial and not summary hearing on indirect civil contempt.

62.   In addition, the wrongful and illegal "investigation" undertaken by Defts. Sankowski and LaRosa on April 20 th 2017, further was intended to wrongfully deprive Plaintiff Jakkie of her civil rights and Free Speech rights by

wrongfully holding her for an investigation in her own home, telling her stories of false arrests made on prior occasions by the officers involved when these officers in fact had no probable cause or reasonable suspicion to believe any crime had been committed.  The officers conspired together to deprive Plaintiff Jakkie of her Free Speech rights under the US constitution,

63. Wherefore, since Defts Horton and Maddaloni conspired together to make unlawful plans to violation Plaintiff's First Amendment Rights, and further did in fact carry out such plans, thereby violating  her First Amendment rights, they committed together actions of Abuse of Process and violations of 18 USC 1030, the defendants must be held liable for a Civil Conspiracy finding, entitling Plaintiff Jakkie to her damages, plus punitive damages and reasonable attorneys fees.

64.    Further, she is entitled to punitive damages in that the actions were wilful, intentional and/or reckless and without due regard to her First Amendment and Due Process Rights.

65.  In addition, since Defts Sankowsky and LaRosa conspired together to deprive Plaintiff of her First Amendment Rights, had no probable cause or reasonable suspicion that she had engaged in any criminal activity, and they instructed her not to use certain words and phrases in her internet postings, thereby chilling her Free Speech, they likewise have engaged in a civil conspiracy, entitling Plaintiff Jakkie to a finding of Civil Conspiracy against the both of them, plus her damages and attorney's fees.  Further, she is entitled to punitive damages in that the actions were wilful, intentional and/or reckless

and without due regard to her First Amendment and Due Process Rights and intentional or reckless in nature.

## COUNT V

## FIRST AMENDMENT RETALIATION

66.  Plaintiff Jakkie herewith incorporates each of the foregoing paragraphs as if fully set forth herein

67.  This count is against Defts LaRosa and Sankowsky.

68.  That on April 20 th 2017, Defts. LaRosa and Sankowsky held Plaintiff Jakkie in her own home and informed her she was "under investigation" for violations of 16-3-1040 and 16-9-340 because she used certain "terms and phrases" on her internet postings that comprised a threat or intimidation to a judicial official.

69.  In no manner could Plaintiff Jakkies postings be considered as any valid or cognizable threat to a judicial official.

70.  Accordingly, these officers had no probable cause or reasonable suspicion to undertake an investigation against Plaintiff Jakkie.  They had no reason to enter her home.  The entire trip was a waste of taxpayer money.

71.  Further, while in Plaintiff Jakkie's home they told her a story of how one of them falsely arrested a disgruntled litigant who wrote a judge scathingly criticizing her handling of his case, which was the litigant's Constitutional right to do so.  The officer admitted the letter contained no threat to the judge, but he subsequently falsely arrested the disgruntled litigant because the judge "felt threatened."  This was a story told to Plaintiff Jakkie which was intended

to intimidate, harass and chill her valid First Amendment Free Speech Rights. South Carolina police officers have no real authority to engage in unlawful actions which chill the valid First Amendment Free Speech of its citizens.

72. By entering Jakkie's private home to investigate her, by undertaking an investigation without probable cause or a reasonable suspicion and intimidating Plaintiff Jakkie that she must not use certain words and terms on her internet postings, these officers engaged in First Amendment Retaliation, entitling the Plaintiff to her actual damages, plus attorney's fees. In addition, Plaintiff Jakkie is entitled to punitive damages inasmuch as the actions were malicious, intentional and/or reckless and without due regard to Plaintiff's civil and U.S. Constitutional Rights.

### COUNT VI

### VIOLATIONS OF SOUTH CAROLINA FREE SPEECH RIGHTS

73. Plaintiff Jakkie herewith incorporates each of the foregoing paragraphs as if fully set forth herein

74. This count is against Defts LaRosa and Sankowsky.

75. That on April 20 th 2017, Defts. LaRosa and Sankowsky held Plaintiff Jakkie in her own home and informed her she was "under investigation" for violations of 16-3-1040 and 16-9-340 because she used certain "terms and phrases" on her internet postings that comprised a threat or intimidation to a judicial official.

76. In no manner could Plaintiff Jakkies postings be considered as any valid or cognizable threat to a judicial official.

77.     Accordingly, these officers had no probable cause or reasonable suspicion to undertake an investigation against Plaintiff Jakkie.  They had no reason to enter her home.  The entire trip was a waste of taxpayer money.

78.     Further, while in Plaintiff Jakkie's home they told her a story of how one of them falsely arrested a disgruntled litigant who wrote a judge scathingly criticizing her handling of his case, which was the litigant's Constitutional right to do so.  The officer admitted the letter contained no threat to the judge, but he subsequently falsely arrested the disgruntled litigant because the judge "felt threatened."  This was a story told to Plaintiff Jakkie which was intended to intimidate, harass and chill her valid  Free Speech Rights under the South Carolina Constitution, Art. 1, Section 2.  South Carolina police officers have no real authority to engage in unlawful actions which chill the valid Free Speech Rights of its citizens under Art. 1, Sec. 2 of the South Carolina Constitution.

79.     By entering Jakkie's private home to investigate her, by undertaking an investigation without probable cause or a reasonable suspicion and intimidating Plaintiff Jakkie that she must not use certain words and terms on her internet postings, these officers engaged in Free Speech Retaliation, entitling the Plaintiff to her actual damages, plus attorney's fees.  In addition, Plaintiff Jakkie is entitled to punitive damages inasmuch as the actions were malicious, intentional and/or reckless and without due regard to Plaintiff's civil rights and South Carolina Constitutional Rights.

## COUNT VII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80.     Plaintiff Jakkie herewith incorporates each of the foregoing paragraphs as if fully set forth herein

81.     This count is against all Defendants.

82.     That after Defts. Horton and Maddaloni sent out Cease and Desist letters and then engaged in an illegal and wrongful court proceeding where her Due Process rights were violated because she had no adequate notice, she had no time to obtain an attorney, there was no arraignment, discovery or jury trial, Plaintiff Jakkie has suffered from the following: sleepless nights, depression, anxiety and panic attacks, flashbacks, confusion, loss of focus, PTSD and other symptoms of severe emotional distress from this incident.

83.     Plaintiff Jakkie is the mother of two young children, ages 3 and 6, works a full time job in her own business as a Professional Trainer and attends school at nights and on weekends. She has absolutely no time, resources or energy for the Defendants Horton and Maddaloni to harass her with false courtroom proceedings that violate her Constitutional Rights under the U.S. and South Carolina Constitutions.

84.     In addition, after Defendants Sanskowsky and LaRosa wrongfully entered the home of Plaintiff Jakkie and told her she was "under investigation" for "intimidating a judicial official", Plaintiff Jakkie subsequently became an emotional wreck and has suffered from the following: sleepless nights, depression, anxiety and panic attacks, flashbacks, confusion, loss of focus, PTSD and other symptoms of severe emotional distress from this incident.  She has absolutely no time, resources or energy for the Defendants Horton and Maddaloni to harass her with false courtroom proceedings that violate her Constitutional Rights under the U.S. and South Carolina Constitutions.

85.     Further, Plaintiff Jakkie has recently had serious bouts with shingles--a painful debilitating condition which is brought about by stress and anxiety.  It has affected her

eyes, focus, memory and ability to participate in college educational activities.

86.    Wherefore, Plaintiff Jakkie prays for a finding of Intentional Infliction of emotional distress against all the defendants--Horton, Maddaloni, Sankowski and LaRosa, for their reckless, wilful, malicious, contemptuous and intention behavior which result in violations of U.S. and South Carolina civil rights laws, and which has caused her severe emotional distress.  She prays for compensation for her actual damages plus punitive damages since the actions were wilful, malicious, intentional and contemptuous.


WHEREFORE, Jacqueline Pidanick herewith respectfully requests that this court issue a Temporary Restraining Order, a Preliminary and Permanent injunction against Attorney Horton and Mr. Maddaloni and Marshall and Goodman, LLC together with their agents, assigns and those that act in privity with them for violating her United States and South Carolina Constitution rights in sending her demand letters to remove content from her Facebook account and other social media websites when the content is subject to Litigation Privilege and Truth as stated therein. She prays for her actual damages in the amount of $100,000 and reasonable attorney fees.   She further prays for an award of $1,000,000 in punitive damages in that the actions of each of the defendants named herein were wilful, malicious, intentional and/or reckless, without due regard to her Constitutional and civil rights.

Respectfully Submitted,

/s/jacquelinepidanick/

Jacqueline Pidanick

Prepared by:
Ms. Jacqueline Pidanick, pro se
4924 Bluffton parkway 22-301
843 338 6278
Jakkiepidanick@yahoo.com

## CERTIFICATE OF SERVICE

The undersigned herewith certifies that on this day of May 5 th 2017, she served the following individuals with a copy of the instant Complaint:

Marshall Horton
Horton and Goodman, LLC
Address: 49 Boundary St, Bluffton, SC 29910
    Phone:(843) 757-6190

Served via mail.

/s/JakkiePidanick/